UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY DEMARTINI, et al., | No. 2:14-cv-2722 JAM CKD PS |
| Plaintiffs, | |
| v. | ORDER AND |
| MICHAEL J. DEMARTINI, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

Plaintiffs' motion for a temporary restraining order ("TRO") came on for an ex parte hearing before the undersigned on December 21, 2016. ECF No. 159. Kirk Rimmer appeared on behalf of plaintiffs Timothy DeMartini and Margie DeMartini (collectively "plaintiffs"). Defendants Michael DeMartini and Renate DeMartini (collectively "defendants") appeared in propria persona. Upon consideration of parties' filings and oral arguments in support,[1] including defendants' opposition to the motion and defendants' documentation in support thereof either filed just prior to or provided during the hearing on this matter, THE COURT FINDS AS FOLLOWS:

/////

/////

---

[1] During the hearing on this matter, defendants submitted two exhibits, Defendants' Exhibits 1 and 2, which the court will docket in this action.

I. Relevant Background

Plaintiffs filed this action in the Nevada County Superior Court on September 15, 2014, asserting, among other claims, a cause of action for the partition of the parties' interests in the parcels of real property located at 12757, 12759, and 12761 Loma Rica Drive, Grass Valley, California. ECF No. 1 at 11-28. Plaintiffs also filed concurrently with their complaint a request for a TRO, which sought to enjoin defendants from, among other things, occupying, selling, encumbering, or otherwise disparaging plaintiffs' interest in the property located at 12759 Loma Rica Drive, Grass Valley, California, one of the properties alleged to be at issue in the complaint. Id. at 7-10. Plaintiffs sought the TRO after defendants had attempted to lease that property to themselves. See ECF No. 163 at 6-7.[2]

On September 16, 2014, the Nevada County Superior Court granted plaintiffs' TRO application and directed defendants to, among other things, immediately vacate the subject property and enjoined them from filing or recording any documents with a government entity on behalf of plaintiffs without plaintiffs' express written authority. Id. at 48-51. That court also directed defendants to show cause why they should not be required to deliver to plaintiffs a notice of cancellation of the leasehold that they had recorded on the property. Id. at 50. Plaintiffs represent that after the TRO was issued, defendants vacated their attempted leasehold of the 12759 Loma Rica Drive property and a new tenant moved in, which caused plaintiffs to not pursue a preliminary injunction against defendants. ECF No. 160 at 5.

Defendants subsequently improperly removed this action to the United States District Court for the District of Nevada, which then transferred this action to this court. ECF No. 163 at 53-55. On October 15, 2015, plaintiffs filed their operative first amended complaint, which asserts the following three causes of action: (1) partition by sale of the parties' interests in the parcels of real property located at 12757, 12759, and 12761 Loma Rica Drive, Grass Valley,

---

[2] Plaintiffs' request that the court take judicial notice of a number of filings made in state and federal court over the course of this action. ECF No. 163. The court grants plaintiffs' request because the documents for which they seek judicial notice are public court records not subject to reasonable dispute. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746, n.6 (9th Cir. 2006); Fed. R. Evid. 201(b).

California; (2) breach of contract; and (3) dissolution of the parties' partnership, and an accounting and sale of that partnership's assets. ECF No. 75.

On December 13, 2016, defendant Michael DeMartini sent an email to plaintiffs' counsel and plaintiff Timothy DeMartini stating the following:

> High Sierra Electric has given notice to the partnership that they are vacating the premises at 12757 Loma Rica Drive by January 1, 2017 per the notice prepared by High Sierra's accountant, Robbie.
>
> Also, please find attached a copy of lease agreement and a memorandum of lease regarding 12757 Loma Rica Drive filed in the Nevada County recorder. I apologize for not sending it sooner, but I was waiting for the copy from the recorder but it got mixed into the mail pile and I forgot about it until just recently.

ECF No. 161 (Decl. of Kirk Rimmer) at 5. Michael DeMartini also forwarded the recipients of that email a copy of the lease contract that defendants had recorded with the Nevada County Recorder's Office, which was signed by Michael DeMartini as the lessor,[3] and Michael and Renate DeMartini as lessees. Id. at 6. This lease was recorded in the Nevada County Recorder's Office on October 20, 2016, and went into effect December 1, 2016, despite the fact that a third party tenant was already paying to lease the property at that time.[4] Id.; ECF No. 160 at 3. Plaintiffs represent that they had not discussed this lease with defendants, and were not otherwise aware that it had been recorded, prior to Michael DeMartini's December 13, 2016 email. Plaintiffs represent further that they are currently "in the process of exploring the leasing of the [12757 Loma Rica Drive] property with several possible tenants in mind, and would expect to lease it for considerably more than the monthly rent stated in Defendant Michael DeMartini's 'self-lease.'" ECF No. 162 (Decl. of Timothy DeMartini) at 2.

/////

---

[3] The lease is signed by Michael DeMartini as "lessor" in his purported capacity as a partner in "DeMartini & Sons, a Nevada and California Partnership [and] DeMartini Brothers Construction, a Nevada and California Partnership," and in his capacity "as an individual." ECF No. 161 at 8.

[4] The lease states in the alternative that the actual commencement date for the lease will be "the date of the intent to vacate the property by the current tenant." ECF No. 161 at 6. The lease sets its termination date for November 30, 2017. Id.

On December 14, 2016, Michael DeMartini sent a second email to plaintiffs' counsel and Timothy DeMartini proposing that the parties' "partnership" take out a "substantial" loan due to "still low interest rates" for the purpose of, among other things, "[f]und[ing] all or portions of the cost associated with the actions that are essentially beneficial to the resolution of partnership related matters." Id. at 11. Michael DeMartini also stated in that email that "while it would be best that all partners sign the loan documents it was determined before that only one partner may be necessary." Id. Plaintiffs state that they interpreted this last part of the email to mean that "Michael intended to take out a loan, allegedly against a partnership of which Plaintiffs are alleged partners, and intends to do so whether or not plaintiffs agree with him." Id. Plaintiff's counsel responded to Michael DeMartini's email on December 15, 2016 rejecting the offer to have the "partnership" take out a loan. Id. On December 19, 2016, plaintiffs filed their request for a TRO that is currently pending before the court. ECF No. 159.

II.  Plaintiffs' Request for a TRO

Plaintiffs request that the court issue a TRO that, among other things, enjoins defendants from occupying, selling, encumbering, or otherwise disparaging plaintiffs' interest in the property located at 12757 Loma Rica Drive, Grass Valley, California, and directs them to vacate that property immediately. Plaintiffs also request that the court direct defendants to show cause why a preliminary injunction should not issue enjoining them from the above conduct during the pendency of this action.[5]

/////

/////

---

[5] Just prior to the hearing on plaintiffs' motion, defendants filed an opposition to plaintiffs' motion along with a declaration of defendant Renate DeMartini in support of that opposition. ECF Nos. 169, 169-1. In their opposition defendants argue that plaintiffs' request for a TRO should be denied because plaintiffs failed to file a TRO checklist as required under the court's local rules, and because plaintiffs unduly delayed in seeking injunctive relief until over two years after this action was filed. As discussed on the record at the hearing on plaintiffs' motion, the court finds that a lack of a TRO checklist is not fatal to plaintiffs' motion. Moreover, the court finds that plaintiffs filed their present motion in response to defendants' recent conduct, i.e., recording a lease on a property at issue in this action, of which plaintiffs just recently became aware, not with regard to events occurring years ago as defendants appear to suggest. Accordingly, the court finds defendants' arguments in opposition unpersuasive.

The standards governing the issuance of temporary restraining orders are "substantially identical" to those governing the issuance of preliminary injunctions. <u>Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.</u>, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). Therefore, "[a] plaintiff seeking a [TRO] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Am. Trucking Ass'n, Inc. v. City of Los Angeles</u>, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7 (2008)). "A preliminary injunction is appropriate when a plaintiff demonstrates ... that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." <u>Alliance for the Wild Rockies v. Cottrell</u>, 622 F.3d 1045, 1049-50 (9th Cir. 2010) (quoting <u>Lands Council v. McNair</u>, 537 F.3d 981, 97 (9th Cir. 2008) (en banc)). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." <u>Winter</u>, 129 S. Ct. at 376.

The Ninth Circuit Court of Appeals has reiterated that under either formulation of the principles, if the probability of success on the merits is low, preliminary injunctive relief should be denied: <u>Martin</u> explicitly teaches that "[u]nder this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits." <u>Johnson v. California State Bd. of Accountancy</u>, 72 F.3d 1427, 1430 (9th Cir. 1995) (quoting <u>Martin v. International Olympic Comm.</u>, 740 F.2d 670, 675 (9th Cir. 1984)).

First, the court addresses whether there is a likelihood of success on the merits of plaintiffs' claims. In their first amended complaint, plaintiffs assert three claims for relief, specifically, a partition by sale of the three properties at issue in this action, a claim for breach of contract, and a request for the dissolution and accounting of the parties' partnership. The court addresses each claim in turn.

For their first cause of action, plaintiffs seek a partition by sale of the tenancy in common they allege they hold in the properties with defendants. In their amended complaint, plaintiffs allege that plaintiffs and defendants jointly hold fee title in each of the properties subject to this

action as tenants in common, with plaintiff's holding a 50 percent interest, and defendants holding a 50 percent interest. ECF No. 75 at 2. Plaintiffs also allege that there are no interests held by any third parties that would be materially affected by a partition by sale. Id. Plaintiffs allege further that a partition by sale is necessary and appropriate because the parties' relationship "has broken down and there are irreconcilable differences between them as to the ownership, management and operation of the [properties at issue] and [those properties are] not capable of physical division." Id. at 3.

It is well established that under California law, "[a] tenant in common has an absolute right to partition." Formosa Corp. v. Rogers, 108 Cal. App. 2d 397, 409 (Cal. Ct. App. 1951); Cal. Code of Civ. Proc. § 872.710(b) (generally "partition as to concurrent interests in the property shall be as of right"); see also De Roulet v. Mitchel, 70 Cal. App. 2d 120 (Cal. Ct. App. 1945); Rich v. Smith, 26 Cal. App. 775, 783 (Cal. Ct. App. 1915) ("Ordinarily, if the party seeking partition is shown to be a tenant in common, and as such entitled to the possession of the land sought to be partitioned, the right to partition is absolute, and cannot be denied."). While partitions by forced sale are generally disfavored, they are permitted when "sale and division of the proceeds would be more equitable than division of the property." Cal. Code of Civ. Proc. § 872.820(b). Because plaintiffs allege facts showing that the parties jointly hold an unencumbered fee title to the properties at issue pursuant to a tenancy at common, that plaintiffs desire to partition those properties, and that a sale of those properties would be more equitable than division, the court finds there is a likelihood of success on the merits of plaintiffs' claim for partition by sale.

In their second cause of action, plaintiffs assert a claim for breach of contract against defendants. Plaintiffs allege in their first amended complaint that, on or about April 30, 1998, they and defendants "jointly executed a promissory note secured by a deed of trust in favor of Westamerica Bank in exchange for a line of credit with the Bank in the amount of [$250,000]." ECF No. 75 at 3. Plaintiffs allege further that defendants and plaintiffs were each responsible for repayment of the entire loan and had an "implicit agreement" that "each would reimburse the other for payments made to the Bank on account of the loan in excess of the payor's one-half

6

share." Id. Plaintiffs also allege that on or about May 23, 2014, they paid off the entire remaining balance of the loan and subsequently made a "demand of the Defendants that they reimburse them for their pro-rata one half share of that payment" pursuant to the parties' agreement. Id. Finally, plaintiffs allege that "Defendants have failed and refused to make the required payment." Id.

To state a claim for breach of contract under California law, plaintiff must allege (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach of the contract; and (4) damages flowing from the breach. CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008). To establish the existence of a valid contract plaintiff must allege: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. United States ex rel. Oliver v. Parsons Co., 195 F. 3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code§ 1550; Marshall & Co. v. Weisel, 242 Cal. App. 2d 191, 196 (1966)). Here, the allegations of the complaint indicate that there existed a valid contract between defendants and plaintiffs, plaintiffs performed their contractual obligations under that agreement, defendants breached that agreement by refusing to pay, and plaintiffs suffered damages as a result of that breach. If proven, plaintiffs' allegations would permit plaintiffs to recover against defendants for breach of contract. Accordingly, the court finds that there is a likelihood of success on the merits of plaintiff's breach of contract claim.

For their third claim, plaintiffs request that the court dissolve the partnership between defendants and themselves, and order an accounting and sale of all partnership assets. Plaintiffs allege in their first amended complaint that, "[i]n or about November 1978," plaintiff Timothy DeMartini, defendant Michael DeMartini, and those parties' father "entered into an oral partnership at will under the firm name of DeMartini and Sons, and recorded a Statement of Partnership pursuant to California Corporations Code section 15010.5." ECF No. 75 at 4. Plaintiffs allege further that the owners of the 12731 Loma Rica Drive property deeded that property to the partnership. Id. Plaintiffs also allege that upon death of Timothy and Michael DeMartini's father, those two parties succeeded to ownership of their father's share of the partnership assets, "and the partnership continued in business with them as the sole partners." Id.

In addition, plaintiffs allege that it is the express will of plaintiff Timothy DeMartini "to dissolve and wind up the partnership business." Id. Finally, plaintiffs allege that defendant Michael DeMartini's conduct relating to the partnership business "makes it not reasonably practicable to carry on the business of the partnership with him." Id. at 4-5.

Pursuant to California Corporations Code section 16801(1), an at will partnership may be dissolved, and its business wound up, when at least half of the partners have expressed their will to dissolve and wind up the partnership business. Alternatively, pursuant to California Corporations Code section 16801(5)(B), a partnership may be dissolved after a partner obtains a judicial determination that "[a]nother partner has engaged in conduct relating to the partnership business that makes it not reasonably practicable to carry on the business in partnership with that partner."

Here, plaintiffs allege that Timothy DeMartini and Michael DeMartini are the sole partners in the DeMartini and Sons at will partnership and that Michael DeMartini, one half of the partners to that partnership, desires to dissolve the partnership and sell off its assets. Plaintiffs also allege Michael DeMartini has engaged in conduct that "makes it not reasonably practicable to carry on the business of the partnership with him." ECF No. 75 at 5. If plaintiffs are able to demonstrate that these allegations are true, then they will be entitled to the dissolution of the partnership, and an accounting and sale of its assets. Accordingly, the court finds that there is a likelihood of success on the merits with regard to plaintiffs' third cause of action.

Because there exists a likelihood of success on the merits for each of plaintiffs' claims asserted in this action, the court finds that the first TRO factor favors a grant of plaintiffs' request for a TRO.

Next, the court addresses whether plaintiffs will suffer an irreparable harm if the emergency injunctive relief they request is not granted. Plaintiffs argue that they will suffer irreparable harm as a result of defendants' lease because it "jeopardizes the executed lease agreement with a third party which is set to commence upon the vacating of the present tenant." ECF No. 160 at 8. Plaintiffs argue further that defendants' lease creates an illegal cloud on the title to the property that interferes with plaintiffs' right to partition the property through this

1   action and to properly lease the property to third parties.  In addition, plaintiffs contend that they
2   would have no other form of recourse if a TRO was not issued to prevent this alleged harm
3   because defendants' conduct is of a continual and repeated nature, and pecuniary relief would be
4   inadequate under the circumstances and extremely difficult to ascertain.
5        The court agrees with plaintiffs and finds that if a TRO is not issued, defendants' lease
6   would disrupt the status quo with regard to the parties' interests in the property at issue in this
7   matter, and potentially jeopardize the lease agreements plaintiffs have entered into with third
8   parties, both present and future.  Therefore, the court finds that plaintiffs have met their burden in
9   showing that they will suffer irreparable harm if the requested TRO is not issued.
10       With regard to the third TRO factor, plaintiffs assert that the balance of the equities
11  between the parties tips in their favor because such an order would preserve the status quo and
12  defendants would not suffer any actual damages or other losses as their lease is nothing more than
13  an improper attempt to falsely claim rights to the property superior to plaintiffs and impede the
14  orderly partition of the property that plaintiffs seek through this action.  The court agrees with
15  plaintiffs' reasoning and finds that the balance of the equities tip in plaintiffs' favor as defendants
16  would be enjoined only from engaging in activities that would improperly burden plaintiffs'
17  interest in the property at issue in this action.
18       Finally, while plaintiffs do not argue in their motion whether the imposition of a TRO
19  would be in the public interest, the court finds that this factor also tips in favor of granting such
20  an order.  There exists a public interest in preventing interferences with proceedings in partition
21  actions, and with existing and future leases on property that have been lawfully entered into.
22  Accordingly, the court finds that this final factor also favors plaintiffs' request for a TRO.
23       In sum, the court finds that plaintiffs meet their burden in demonstrating that they are
24  entitled to a TRO providing the injunctive relief they request.  Accordingly, the court
25  recommends that a TRO issue providing the temporary injunctive relief set forth in greater detail
26  below.
27  /////
28  /////

Plaintiffs request further that the court not require them to post a bond with regard to the issuance of the requested TRO. Plaintiffs contend that defendants will not suffer any damages as a result of the requested injunction as plaintiffs are merely preserving the status quo with regard to the parties' respective interests in a property that has been subject to a partition action for over 2 years, during which time defendants have not been lessees. Plaintiffs also argue that defendants' attempt to lease the property to themselves is nothing more than an improper attempt to cloud title and grant themselves rights in the property superior to plaintiffs.

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of the bond rests within the sound discretion of the trial court and is subject to review only for an abuse of that discretion. See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1211 (9th Cir. 2000); Walczak v. EPL Prolong, Inc., 198 F.3d 725, 730 (9th Cir. 1999).

Here, the injunction plaintiffs seek merely preserves the status quo among the parties with regard to the 12757 Loma Rica Drive property, and the requested relief only temporarily precludes defendants from attempting to improperly encumber the property that is subject to a partition action. In short, there is no indication that defendants will legitimately suffer damages as a result of the injunction. Accordingly, the court finds that the TRO should issue without the need for plaintiffs to post bond. See Connecticut General Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 882 (9th Cir. 2003) ("The district court is afforded wide discretion in setting the amount of the bond . . . and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction.").

III.   Plaintiffs' Request to Impose a Bond Requirement on Defendants Pursuant to Local Rule 151

Plaintiffs also request that defendants be required to furnish a bond pursuant to this court's Local Rule 151(b) based on defendants' continuing improper conduct in this matter. Local Rule 151(b) authorizes this court, on its own motion or on motion of a party, to "order a party to give a security, bond, or undertaking in such an amount as the Court may determine to be appropriate."

L.R. 151(b). Through this Local Rule, this court has adopted "the provisions of Title 3A, part 2, of the California Code of Civil Procedure, relating to vexatious litigants, on [which] basis the Court may order the giving of a security." Id. Plaintiffs argue that defendants' conduct relating to the recordation of the lease, in particular, their failure to inform plaintiffs until nearly two weeks after the lease went into effect and roughly two months after the lease was recorded, is just the latest misconduct in a long line of inappropriate conduct by defendants throughout the course of this litigation thus far.

While plaintiffs' reasons in support of their request appear to provide a potentially sound basis on which to impose a bond requirement on defendants under Local Rule 151(b), the court declines to do so at this juncture. Plaintiffs have filed their request as part of an ex parte application for a TRO, against which defendants have not had an opportunity to file an opposition to this request.[6] The court finds that defendants should first have an opportunity to oppose plaintiffs' request before any order is issued directing defendants to post a bond in this action. Accordingly, plaintiffs' request is denied, but without prejudice to their filing a properly noticed motion making such a request, to which defendants will have an opportunity to provide an opposition.

IV. Conclusion

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiffs' request that defendants be ordered to post a bond pursuant to Local Rule151(b) is denied without prejudice to a renewal of that request through a properly noticed motion that provides defendants an opportunity to oppose plaintiffs' request.

Furthermore, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' application for a TRO (ECF No. 159) be granted.
2. Defendants Michael DeMartini and Renate DeMartini be directed to vacate the

---

[6] While defendants filed an opposition to plaintiffs' motion just prior to the hearing, that opposition did not address plaintiffs' request pursuant to Local Rule 151. Because defendants were not required to file a response to plaintiffs' motion, given its ex parte nature and the limited time frame in which a response could be filed, the court finds that their failure to address that issue in their opposition does not constitute a statement of non-opposition to plaintiffs' request.

11

        premises of the property located at 12757 Loma Rica Drive, Grass Valley, California forthwith and immediately.

3. Defendants, their agents, servants and employees, be temporarily restrained from the following through the date on which an order regarding any motion for a preliminary injunction regarding defendants' activities on the property located at 12757 Loma Rica Drive, Grass Valley, California is issued, or 14 days following the issuance of an order regarding these findings and recommendations,[7] whichever length of time is shorter:

    a. Occupying the property located at 12757 Loma Rica Drive, Grass Valley, California;

    b. Interfering with any lawful tenant's occupancy and full use of the property located at 12757 Loma Rica Drive, Grass Valley, California, and interfering with plaintiff Timothy DeMartini's use, occupation, control and management of that leasehold interest;

    c. Filing or recording any documents with the County Recorder, Secretary of State, or other government entity with regard to the property located at 12757 Loma Rica Drive, Grass Valley, California on behalf of plaintiffs without their express written authority;

    d. Further disparagement or slandering of plaintiffs' title to the property located at 12757 Loma Rica Drive, Grass Valley, California, and preventing further publication of a claim or interest casting doubt upon plaintiffs' title;

    e. Holding the ownership of the property located at 12757 Loma Rica Drive, Grass Valley, California out as a "partnership"; and

    f. Selling, transferring, or otherwise encumbering any interest in or otherwise clouding title to the property located at 12757 Loma Rica Drive, Grass Valley,

---

[7] Under Federal Rule of Civil Procedure 65(b)(2), the duration of a TRO is not to exceed 14 days total, unless extended by the court based on a showing of good cause or the adverse parties' consent. Accordingly, the TRO the court recommends be issued should be of a duration no longer than 14 days total after such an order is issued absent a showing by plaintiffs that there is good cause for or defendants' consent to an extension of its duration.

California.

4. Defendants be ordered to deliver to plaintiffs' attorney Kirk Rimmer within 5 days of the date of an order regarding these findings and recommendations a "Notice of Cancellation" of the "Memorandum of Lease" recorded at the Nevada County Recorder's Office by defendant Michael DeMartini on October 20, 2016, as Document No. 20160024151.

5. Defendants be directed to appear before the undersigned on a date no later than 14 days after the date of an order regarding these findings and recommendations to show cause why a preliminary injunction enjoining them from engaging in the conduct set forth above during the pendency of this action should not be issued.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 22, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 demartini2722.tro