UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY P. DEMARTINI, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MICHAEL J. DEMARTINI, et al.,<br><br>    Defendants. | No. 2:14-cv-2722 JAM CKD PS<br><br>FINDINGS AND RECOMMENDATIONS |

Before the court is plaintiffs' (Timothy and Margie's) motion for summary judgment against defendants' (Michael and Renate's) counterclaims. (ECF No. 202.) At a May 31, 2017 hearing on the motion, plaintiffs were represented by counsel Kirk Rimmer and Christian Kemos, and defendants proceeded pro se. After their arguments, the court took the matter under submission. Upon review of the record and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

This case is predicated on diversity jurisdiction. As set forth in their Second Amended Answer and Counterclaims (ECF No. 104), Michael and Renate assert three causes of action: (1) declaratory relief establishing that, since 1974, the parties have been in a partnership to pool resources and operate various businesses; (2) breach of the partnership by plaintiffs in 2014; and (3) defamation by plaintiffs in 2014. Timothy and Margie assert defendants have not raised a genuine dispute of material fact as to any claim.

/////

1

I. <u>Summary Judgment Standard Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u>

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. <u>See</u> Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>see</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

////

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

II. Declaratory Relief

Michael and Renate allege that, circa 1974, plaintiff Timothy and defendant Michael entered into an oral partnership agreement to pool resources and operate a variety of businesses, including land development, building, automobile repair, and sales. In 1977, Timothy and Michael's father James allegedly joined the partnership. Michael and Renate allege that, every year, Timothy and Michael would discuss the operations of the partnership businesses and make decisions relating to them. After James passed away in 1983, Timothy and Michael allegedly agreed to continue the oral partnership. From 1974 to the present, the partnership agreement was that Michael, Timothy, and other partners agreed to share in the profits and losses of the businesses. Michael and Renate allege that the partnership includes the following assets:

- The Coan Ranch properties;

- The Maltman Drive property;
- The Dorsey East Main Street property;
- The 625 Idaho Maryland Road property;
- The property at 12731 Loma Rica Drive;
- The properties at 12757, 12759 and 12761 Loma Rica Drive[1]
- and the expansion of the various businesses that have developed over the many years between the partners, including purchasing and development of the Coan Ranch and other businesses including the Auto and Recreational Vehicle Sales and Service business.

California Corporations Code § 16101, subd. (9) defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit[.]" "Generally, a partnership connotes co-ownership in partnership property, with a sharing in the profits and losses of a continuing business." Chambers v. Kay, 29 Cal. 4th 142, 150-151 (2002). "An essential element of a partnership or joint venture is the right of joint participation in the management and control of the business. [Citation.] Absent such right, the mere fact that one party is to receive benefits in consideration of services rendered or for capital contribution does not, as a matter of law, make him a partner or joint venturer." Bank of California v. Connolly, 36 Cal. App. 3d 350, 364 (1973).

California Corporations Code § 16202 sets forth the rules for determining whether a partnership is formed. Under § 16202, subd. (a), except as otherwise provided, "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intended to form a partnership." "A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received" as payment of a debt, for services, as rent, or other types of payment. Corp. Code, § 16202, subd. (c)(3); see Chambers, 29 Cal. 4th at 151, n.3. "Whether a partnership or joint

---

[1] The Loma Rica Drive properties are acknowledged to be co-owned by the parties, and plaintiffs' claim for dissolution of this partnership has been remanded to state court. (ECF No. 224.)

venture exists is primarily a factual question to be determined by the trier of fact from the evidence and inferences to be drawn therefrom." Bank of California, 36 Cal. App. at 364; see also Weiner v. Fleischman, 54 Cal. 3d 476 (1991) (existence of an oral joint venture or partnership agreement must be established by a preponderance of the evidence, rather than clear and convincing evidence).

California Corporations Code § 16204 concerns the acquisition of partnership property:

> (a) Property is partnership property if acquired in the name of either of the following:
>
> (1) The partnership.
>
> (2) One or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership but without an indication of the name of the partnership.
>
> (b) Property is acquired in the name of the partnership by a transfer to either of the following:
>
> (1) The partnership in its name.
>
> (2) One or more partners in their capacity as partners in the partnership, if the name of the partnership is indicated in the instrument transferring title to the property.
>
> (c) Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or of one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership.
>
> (d) Property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes.

California Evidence Code § 662 provides: "The owner of the legal title to the property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." Section 662 applies to allegations that a party has beneficial rights to property pursuant to an oral agreement, even if title is not in their name. See Murray v. Murray, 26 Cal. App. 4th 1062, 1067 (1994), citing Tannehill v. Finch, 188 Cal. App. 3d 224,

227-228 (1986). "The clear-and-convincing standard requires that the evidence be so clear as to leave no substantial doubt in the mind of the trier of fact; it must be sufficiently strong to command the unhesitating assent of every reasonable mind." 31 Cal. Jur. 3d Evidence § 96, citing In re Angelia P., 28 Cal. 3d 908 (1981) (other citations omitted).

Michael and Renate's claim for declaratory relief "is based on a partnership relationship between the parties existing as an ongoing business . . . [,] a partnership existing beyond joint properties or property lines."[2] (ECF No. 216-4, Second Affidavit of Michael DeMartini, ¶ 20.) Timothy and Margie argue that no such partnership existed. As to specific assets, plaintiffs assert there is no genuine dispute of fact as to whether any of these were part of the claimed partnership.

A. <u>Partnership formation</u>. Michael declares that, when the parties formed an oral agreement in 1975, "[t]here were no special terms, waivers or other complexities in the agreement. It was merely an agreement to do business together with understood loyalty and things that go along with it."[3] (Second Affidavit of Michael DeMartini, ¶ 3.) "The oral agreement was renewed when plaintiffs moved to Nevada and on a yearly basis thereafter." (<u>Id.</u>, ¶ 5.) In 1977, "the oral agreement was modified such that Michael would provide more funding and educational expertise into the partnership and Timothy would provide more work and spend more time, but contribute less capital." (<u>Id.</u>, ¶ 7.) "From time to time the oral partnership agreement with Timothy was adjusted as [need be] for different businesses, conditions and participation arrangements and even compensation for extraordinary services by partners." (<u>Id.</u>, ¶ 10.)

Defendants' evidence of the alleged partnership includes the following: A 1975 check from "Tim" (Timothy) to Michael for $450 (Second Affidavit of Michael DeMartini, Ex. A); 1977 and 1978 DeMartini Company income tax returns listing James, Timothy and Michael as

---

[2] Defendants maintain that Michael's own businesses (Meridian Company, formed in 1995, and American Environmental, formed in 1998) are not part of the global partnership. (<u>See</u> Plaintiff's MSJ at 8.)

[3] At the hearing on the motion, Michael DeMartini explained that, within the family, it was "considered offensive" to ask for a written agreement, as good faith was assumed.

partners (id., Exs. B & C); and 1978 checks for $5,000 and $560 from Michael to DeMartini Co. (id., Ex. D). Michael also submits a map he prepared in 1973 for the East Main Street property that would be used for the first DeMartini auto sales business (id., Ex. J.); a 1985 lease agreement between Michael and Timothy ("a general partnership") and a third party (id., Ex. E); and phone records showing frequent calls between the brothers in 1986 (id., Ex. I). As recent evidence of the partnership, defendants cite the 2006 publication of a fictitious business name for Michael and Timothy doing business as DeMartini Brothers Construction and DeMartini & Sons (id., Ex. F); and a 2013 bank document listing an account for DeMartini & Sons and signed by Timothy, Margie, Michael, and Renate (id., Ex. G).

Plaintiffs contend that any documents indicating a partnership on their face "relate to the DeMartini and Sons Partnership at Loma Rica Drive," an issue which has been removed to state court. (ECF No. 218, Plff's Reply, at 8.)

B. <u>DeMartini Auto Sales, DeMartini RV Sales, DeMartini Sunshine Body Shop ("the RV businesses")</u>. Timothy asserts that these are solely-held businesses of his and Margie, owned and operated by them for forty years and built from their sole risk and contributions. Per his declaration, Timothy started the DeMartini Sunshine Body Shop in Reno in 1974, Margie began working with him in 1975, and it closed in 1977. In 1979, Timothy obtained a California Dealer's license and started DeMartini Auto Sales. He began by restoring and selling old cars, then progressed to buying and selling RVs, developing a popular website in 1995 and employing up to 40 people. In 2004, the business expanded from 1305 Dorsey East Main Street in Grass Valley to a state-of-the-art facility at 625 Idaho Maryland Road, built with Timothy and Margie's own funds, including a down payment on the property from Timothy and Margie's personal bank credit line in their names only. Timothy hired an architect and engineers to design the new facility, built with the help of his sons and employees. Margie worked on bookkeeping and financials. Timothy asserts that Michael and Renate have never been involved with the management or operation of these businesses, nor shared in the profits or been privy to financial information about them. (ECF No. 202-5, Decl. of Timothy DeMartini.) Timothy cites Michael's deposition testimony to establish that Michael has never received a California Schedule

7

K-1 or partnership distribution from the RV businesses in forty years; there is no RV business license in Michael's name; Michael never wrote a check to the IRS for the RV businesses, never sold or purchased any RV for DeMartini RV Sales, and never paid any bills on behalf of the RV businesses. (UMF 7.)

Defendants counter that Michael paid bills on behalf the RV businesses indirectly, by "doing 100 percent of the work on some of the other partnership properties and creating money up into the hundreds of thousands of dollars . . . that was equally divided and provided to Timothy, so he could pay off the loans of" the RV businesses. (Defs.' Response to UMF 7, citing Michael DeMartini Deposition, 12/8/16 99:18-100:9). As evidence for this proposition, he cites Renate's December 2016 declaration, where she interprets an attached income sheet for DeMartini Brothers Construction between 2002 and 2014. (Defs.' Response to UMF 9, citing ECF No. 169-1, Decl. of Renate DeMartini, Ex. A.) Renate declares that this income report "for a portion of the partnership businesses and properties at 12757, 12759, and 12761 Loma Rica Drive in Grass Valley" shows that "the tenants that Michael and Renate DeMartini secured on behalf of the partnership brought in $774,519.44 to benefit the partnership. For that same period ... Timothy DeMartini secured tenants supposedly in the name of the partnership and brought in total income of $70,600." (Id., ¶ 3.) Thus, she concludes, Michael and Renate were responsible for nearly 92% of the income on these partnership properties over twelve years, which she declares was split fifty-fifty with Timothy and Margie. (Id., ¶¶ 3-4.)

This report appears to be the main piece of evidence for defendants' claim that they were bringing in money for the partnership, which Timothy was spending on the RV businesses, so that the development and RV enterprises functioned as two halves of a partnership. Assuming the report is admissible, however, it shows little except the parties' joint management of the Loma Rica properties, not at issue here.[4] The report states that certain tenants were "managed" by Michael or Timothy, but does not indicate who "secured" the tenants. While it lists deposits into

---

[4] Similarly, at the hearing, Michael DeMartini cited his design of five units of major buildings, worth "hundreds of thousands of dollars," and his generation of "millions" in shared income. These statements also concerned the Loma Rica buildings, the subject of a partnership remanded to state court.

8

an unnamed WestAmerica Bank account, the report makes no mention of how the income was distributed between plaintiffs and defendants and/or plowed back into the partnership. And the report makes no mention of the RV businesses or the disputed real properties.

Michael further declares that he worked with DeMartini's Sunshine Body Shop in Reno in the 1970s, rebuilding salvaged vehicles for resale. (ECF No. 216-3, First Affidavit of Michael DeMartini, ¶¶ 3-4.) A few years later, a car lot was constructed at 1305 Dorsey East Main Street in Grass Valley, using the survey plot plan prepared by Michael in the early 1970s. (Id., ¶ 11.) This property was initially rented, then purchased by Timothy after their father passed away in 1983. (Id.) In the 1980s, the brothers "talked about the various business co-adventures such as automobile sales, land development, the industrial development at the airport, and home building." (Second Affidavit of Michael DeMartini, ¶ 21.) In the early 1990s, Timothy and Michael agreed that Timothy would focus more on auto sales and RVs and be paid for the work he did in this business, while Michael would pursue "land development opportunities" and be paid for this work. (First Affidavit of Michael DeMartini, ¶ 14.) In 2002, Timothy "encouraged [Michael] to continue doing all the work on the other businesses to bring in more money" while Timothy devoted his time to the RV business. (Id., ¶ 17.) Except for the tenant income sheet described above, Michael points to no evidence showing that, for decades, he was funneling money into the partnership or the RV businesses.

Michael and Timothy had numerous meetings about business strategies for the RV businesses, and since the 1970s Michael corresponded with Timothy about the RV businesses, "being a sounding board . . . and providing engineering expertise," all without pay. (Second Affidavit of Michael DeMartini, ¶¶ 27, 29.) In 2014, Timothy began taking actions to "squeeze" Michael out of the partnership, and in September 2014, he filed suit for partition of one jointly-owned property. (First Affidavit of Michael DeMartini, ¶ 23.)

C. <u>Real Property at 625 Idaho Maryland Road</u>. It is undisputed that this property was purchased in 2004 by Timothy and Margie, with a down payment from their personal bank account, and that the title is in their names. (UMF 9.) Michael did not sign any loan documents for the property, make payments to any lender, or "sign[] anything relating to 625 Idaho

9

Maryland Road." (UMF 12.) Since its purchase, this property has been exclusively managed and operated by Timothy and Margie in conjunction with the RV businesses, and no Schedule K-1 distributions were issued in relation to it. (UMF 10.)

Michael declares that he "did some research on the property and gave some recommendations regarding the possible purchase." (First Affidavit of Michael DeMartini, ¶ 17.) He also worked with Timothy on grading, drainage, and other engineering issues for the new facility, without pay, although the facility was designed and built by others. (Id., ¶¶ 18-19; Second Affidavit of Michael DeMartini, ¶ 22.); UMF 10.) Michael further asserts that he and Renate were working on other partnership properties and bringing hundreds of thousands of dollars into the partnership to help with the purchase of the property at 625 Idaho Road. (Defs' Response to UMF 9.) As evidence, he cites Renate's declaration about tenant income from the Loma Rica Drive properties, discussed above.

D. <u>Real Property at Dorsey East Main Street</u>. This property was acquired by Timothy and Margie when they purchased a half-ownership in 1990 from Timothy's mother, and another half-ownership in 1992 from Timothy's uncle's estate. Plaintiffs made these purchases with cash and personal loans or mortgages. (UMF 14.) The property title is in Timothy and Margie's name. (Id.) Since the 1990s, it has been managed and operated by Timothy and Margie in relation to the RV businesses. (UMF 16.) Timothy declares that Michael and Renate have never been involved in managing this property, shared in the profits from any of the businesses on this property, never received financial information about them, and never received a partnership distribution from them. (UMF 16.) Michael has never had an office at that location and has not been involved in bill paying, payroll, taxes, or loans involving the property. (UMF 18.)

In response, Michael cites his deposition testimony stating he believed there was an agreement that he would work on the development business while Timothy worked in the RV businesses, all as part of the partnership. (Defs' response to UMF 16.) He also cites his unpaid work conducting a preliminary survey and map of the property in 1973. (Second Affidavit of Michael DeMartini, ¶ 28.)

////

10

E. <u>Real Property at Maltman Drive</u>. Per Timothy's declaration, he and Margie bought the property at 720 Maltman Drive for cash in 1994. (UMF 20.) They built a 5,000 square foot building and a parking lot and used the property for their auto/RV shop until they bought the property at 625 Idaho Maryland Road. (Id.) The property has been exclusively managed by Timothy and Margie, and the title is in their names. (UMF 20-22.) Timothy declares that Michael and Renate have never been involved with the management or operations of businesses on the Maltman property, never shared in the gross returns or profits of these businesses, and never received a tax return for the Maltman property. (UMF 21, 25.) It is undisputed that defendants never received a K-1 distribution for this property. (Id.)

Michael declares that he was "involved in the pre-planning engineering feasibility" for the Maltman property, which he did without pay. (Second Affidavit of Michael DeMartini, ¶ 32.) He "believes" the property was part of the partnership between plaintiffs and defendants, "otherwise the leasing of it that started around 2008 would have been competing with the partnership." (Id., ¶ 33.) Michael also contends that he "indirectly" managed the Maltman property, stating in deposition that "when the property was being developed and purchased, Timothy and I consulted with each other regarding the viability of purchasing that property and developing it." He cites phone bills of calls between him and Timothy as evidence supporting this statement. (Michael DeMartini Depo. of 1/21/17, pp. 357:18-358:9.)

F. <u>Conclusion</u>. Overall, defendants' evidence for an oral agreement encompassing forty years' of business and real property acquisitions is both sparse and vague. Much of it amounts to Michael acting as a consultant or advisor, lacking real responsibility or stake in the claimed partnership endeavors. Michael concedes that the partnership had "no special terms," was orally adjusted over the years "as need be," and existed "beyond joint properties or property lines." While the parties were in an acknowledged partnership concerning the Loma Rica Drive properties, the scope, terms, and duration of any further partnership seem to be drawn from Michael's own assumptions and little else. See <u>F.T.C. v. Publ'g Clearing House, Inc.</u>, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

11

As to the real properties at 625 Idaho Maryland Road, Dorsey East Main Street, and Maltman Drive, Timothy and Margie hold title to all three properties, making them the presumptive owners of the "full beneficial title" absent clear and convincing proof to the contrary. See Cal. Evid. Code § 662. There is no evidence that Michael participated in the management and control of these properties (aside from occasional advice or assistance), nor that he received a share of the profits of any businesses associated with the properties. Michael claims there was an oral agreement that he would generate income from the Loma Rica properties and deposit them in a partnership account, split 50/50, such that Timothy's purchase of the 625 Idaho Road Property in 2004 was done in part with partnership assets. See Corporations Code § 16204(c) (property is "presumed to be partnership property if purchased with partnership assets"). However, there is not enough evidence of this arrangement to potentially meet the "clear and convincing" standard as to real property held in plaintiffs' names.

As to the RV businesses, defendants have made no showing that, apart from the Loma Rica properties, they were in a long-term profit-sharing arrangement, with money earned by defendants used to grow plaintiffs' RV businesses. Overwhelmingly, the evidence shows that Timothy and Margie invested in, managed, operated, and profited from these businesses with only incidental help from Michael. There is no evidence of a shared understanding that these were Michael's and Renate's businesses also. It would have been simple enough to document that the RV businesses were co-owned by the partnership, had the parties so intended, but no such documentation exists. Based on the foregoing, the undersigned will recommend that summary judgment be granted on defendants' claim for declaratory relief.

III. Breach of Contract

This claim is predicated on the existence of a global partnership agreement, allegedly breached by plaintiffs. Specifically, Michael and Renate allege that in 2014, Timothy fired the partnership's accountant without a majority vote, as required by the partnership agreement. (Defs.' Ans., ¶ 31.) The same year, plaintiffs allegedly breached the contract by diverting funds held in the partnership account at WestAmerica Bank to plaintiffs' personal account, then closed the partnership account, causing Michael's checks to bounce. (Id., ¶ 32.) Defendants contend the

partnership agreement required "majority approval" for these actions. (Id.) Also in May 2014, Timothy allegedly had Michael's office at 12731 Loma Drive cleaned out without Michael's permission, and prevented Michael from using the office at 625 Idaho Maryland Road. (Id., ¶¶ 33-34.) Additional alleged breaches include engaging in building renovations without majority approval and Timothy's claim that he has full control of the partnership business. (Id., ¶¶ 37-39.)

To state a claim for breach of contract under California law, plaintiff must allege (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach of the contract; and (4) damages flowing from the breach. CDF Firefighters v. Maldonado, 158 Cal. Ap. 4th 1226, 1239 (2008). To establish the existence of a valid contract, plaintiff must allege: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. United States ex. rel Oliver v. Parsons Co., 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550).

There is no evidence of a contract with specific terms, i.e., majority vote required for decisions. Rather, as set forth above, Michael admits that the 1974 oral contract was merely an "agreement to do business together" with "no special terms" and "understood loyalty." Over the years, the oral partnership was adjusted "as need be." Thus, there appears to be no genuine dispute of fact as to whether Timothy and Margie breached any contract terms by engaging in the alleged actions, and summary judgment should be granted on defendants' breach of contract claim.

IV. Defamation

Defendants allege that, as the parties' relationship deteriorated in 2014, Timothy made statements to third parties that Michael "improperly stole $1,600 out of a bank account to pay personal phone bills," impersonated Timothy, stole Timothy's social security number, was wrongfully occupying a particular building, and owed Timothy $80,000, among other statements. (Defs. Ans., ¶¶ 71-72, 75.) Defendants allege that, as a result of these defamatory statements, they have been damaged in the amount of $75,000. (Id., ¶ 76.)

In California, "[t]he elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special

damage." Wong v. Tai Jing, 189 Cal. App. 4th 1354 (Ct. App. 2010). Per the California Civil Jury Instructions, defendants must prove:

> 1. That [name of defendant] made [one or more of] the statement(s) to [a person/persons] other than [name of plaintiff];
>
> 2. That [this person/these people] reasonably understood that the statement(s) [was/were] about [name of plaintiff];
>
> 3. [That [this person/these people] reasonably understood the statement(s) to mean that [insert ground(s) for defamation per se, e.g., "[name of plaintiff] had committed a crime"]];
>
> 4. That [name of defendant] failed to use reasonable care to determine the truth or falsity of the statement(s).

or

> 1. That [name of defendant] made [one or more of] the statement(s) to [a person/persons] other than [name of plaintiff];
>
> 2. That [this person/these people] reasonably understood that the statement(s) [was/were] about [name of plaintiff];
>
> 3. That because of the facts and circumstances known to the [listener(s)/reader(s)] of the statement(s), [it/they] tended to injure [name of plaintiff] in [his/her] occupation [or to expose [him/her] to hatred, contempt, ridicule, or shame] [or to discourage others from associating or dealing with [him/her]];
>
> 4. That [name of defendant] failed to use reasonable care to determine the truth or falsity of the statement(s);
>
> 5. That [name of plaintiff] suffered harm to [his/her] property, business, profession, or occupation [including money spent as a result of the statement(s)]; and
>
> 6. That the statement(s) [was/were] a substantial factor in causing [name of plaintiff]'s harm.

(CACI Nos. 1704 & 1705.) Under either theory, defendants must prove damages. (Id.)

In a June 2015 declaration, Michael set forth the details of Timothy's allegedly defamatory actions on August 27, 2014, when Timothy "explained very loudly to Greg, and everybody else within about 200 feet that was listening, how terrible I was and how I was a criminal." (ECF No. 48, Decl. of Michael DeMartini, ¶¶ 125-138.) "I believe Timothy knew that his statements were untrue because I had sent him documents stating so," Michael declares, citing various emails, checks, and faxes. (Id., ¶¶138-142.) Later that day, the brothers argued and the sheriff got involved, with Timothy making more allegedly defamatory statements. (Id., ¶¶ 144-

14

152.) More recently, Michael's First and Second Affidavits in opposition to summary judgment do not address the defamation claim. Nor does Renate's two-page affidavit in opposition to summary judgment address this matter.

On this record, defendants have failed to create a triable issue of fact as to the elements of defamation, including the requirement to prove actual damages. Thus, summary judgment should be granted as to defendants' defamation claim.

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's motion for summary judgment (ECF No. 202) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 13, 2017

                                    CAROLYN K. DELANEY
                                    UNITED STATES MAGISTRATE JUDGE

2 demartini2722.sj_fr