UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY P. DEMARTINI, et al., | No. 2:14-cv-02722-DJC-CKD |
| Plaintiffs, | |
| v. | PARTITION ORDER |
| MICHAEL J. DEMARTINI, et al., | |
| Defendants. | |

At issue before this Court is how to partition property held by two brothers and their wives as joint tenants. The Parties have vigorously disputed the manner of partition, with Plaintiffs advocating for partition by sale and Defendants favoring partition in kind. Having reviewed the report and recommendations filed by the court-appointed partition referee, as well as the Parties' briefings, the Court finds that partition by sale is the more equitable remedy. Accordingly, as set forth below, the Court will order the Parties and partition referee to take all necessary steps to prepare the property for sale.

**BACKGROUND**

Plaintiffs Timothy DeMartini and Margie DeMartini filed this action on September 15, 2014, against Defendants Michael DeMartini and Renate DeMartini seeking, in part, the partition of real property located at 12757, 12759, and 12761 Loma Rica Drive, Grass Valley, California ("Property") owned by the Parties as joint

1

tenants. (ECF Nos. 1, 75.) The Property is a 57,000 square foot rectangular parcel with access to one public road, Loma Rica Drive, to the north. (ECF No. 361 at 4-5.) The Property is improved with two commercial buildings of about 7,200 square feet each, one situated on the north half, and one situated on the south half of the parcel. (*Id.* at 5.)

The Court held a bench trial on Plaintiffs' partition claim on April 17 and 18, 2018, and issued an Interlocutory Judgment on May 30, 2018, in which the Court ordered the Property be partitioned in kind and divided between Plaintiffs and Defendants in proportion to their respective 50% interest in the Property. (*Id.* at 15.) The Court ordered Defendant Michael DeMartini to submit a plan for subdivision of the Property by June 30, 2018. (*Id.* at 16.) The Court also ordered that partition be completed no later than June 30, 2019, otherwise the Court would appoint a referee to carry out its order. (*Id.*)

Defendant Michael DeMartini filed a proposed subdivision plan on June 30, 2018. (ECF No. 372.) Plaintiffs opposed the plan on July 30, 2018. (ECF No. 377.) The Court reviewed the plan, as well as the objections, and determined the plan to be deficient. (ECF No. 381.) Accordingly, the Court ruled it would appoint a referee "charged with planning and implementing the partition in kind" under California Code of Civil Procedure section 873.020.[1] (*Id.*) The Parties were ordered to submit names of proposed referees within twenty-one days. (*Id.*)

The Court held a hearing on September 18, 2018, and appointed attorney Charles R. Farrar, Jr. to serve as the referee ("Referee") over the partition of the Property. (ECF Nos. 388, 393.) As a first step, the Court ordered the Referee to advise the Court on the best manner in which to partition the Property. As the Court stated:

////

////

---

[1] "The court in its discretion may appoint a referee for sale and a referee for division or may appoint a single referee for both." Code Civ. P. § 873.020.

> There is an order that this property, again, be either divided or be sold, and that's, sort of, the first thing you're going to have to talk to the parties about and then make a decision.
>
> I did not find the plans for partition to be feasible, quite frankly. You can disagree with me on that, I'm giving you that authority. If you think this property can be divided, and that's the best way to do it, so each brother takes one half of the property and they go their separate ways, that's fine. But if you think that's not feasible, they have to live with your decision now. And that means you hire an appraiser, and the property, hopefully, will be sold.
>
> There are issues with the possible sale of that property, and they'll explain that to you, particularly possible environmental issues that also may make the sale impossible. And if that's the case, I don't know what we're going to do, frankly.
>
> I am hopeful that one of those two solutions will play out. If not, then I'm going to have to come back to the parties and say, now what do you want us to do? It may be that they're going to have to live with each other in perpetuity, but that would seem to cut against my order that they go their separate ways.
>
> So, I'm going to let you have all that responsibility, knowing that I'm here in case you need something.

(ECF No. 393 at 8:5-9:4.)

In accordance with the Court's mandate, the Referee engaged SCO Planning, Engineering and Surveying ("SCO") to prepare and prosecute a "Pre-Application Review" with Nevada County to assess the feasibility of subdividing the Property into two parcels, a northern parcel ("Parcel 1") and southern parcel ("Parcel 2"). (ECF Nos. 399–400.) The Referee also commissioned Daniel R. Ketcham & Associates ("Ketcham") to appraise the Property's value.[2] (ECF Nos. 417, 419.) On October 17, 2019, the Referee submitted a report and recommendations to the Court ("Partition Report") in which the Referee recommended that the Court order partition by sale

---

[2] Maps of the proposed subdivision are included in the Ketcham appraisal. (ECF No. 442 at 13–14, 23.)

3

rather than partition in kind for two primary reasons: the questionable feasibility and lack of economic benefit of subdividing the Property. (ECF No. 441.)

First, the Referee reviewed the recommendations of SCO and found that subdivision of the Property would be problematic at best. (*Id.* at 3, 13–14.) The Referee found that subdivision was "at least theoretically feasible without amendment of existing land use ordinances as was determined by a Nevada County Pre-Application Review," and noted that SCO reported Nevada County's approval of subdivision of the Property was "highly likely." (*Id.* at 3, 13.) That said, the Referee also found that "eventual approval by the County of such a subdivision of the Property would be subject to material doubt" as the application could be "denied or approved with conditions that make the project financially infeasible," and subdividing the Property would require one or more variances to existing zoning requirements which would need to be approved through a discretionary review process. (*Id.* at 3–4, 14.)

Further, while SCO did not rule out County approval of subdivision, SCO also noted that the subdivision process would "require the cooperation of both owners in order to successfully obtain the reports and studies, perform the subdivision map design, and the related owner input on decisions required for preparing that map and preparation of the Tentative Map Application required by Nevada County." (*Id.* at 13.) SCO noted that the Property was situated such that subdivision would require the Parties to continue cooperating in perpetuity, such as by agreeing to road access easements. (ECF No. 441-5 at 1–2.) However, the Referee found that the "Parties have conclusively demonstrated the lack of ability to cooperate in the subdivision process and as owners of adjacent parcels sharing use of facilities . . . ." (ECF No. 441 at 4.) "On at least three separate occasions the undersigned solicited the Parties to avoid a Court ordered Partition by Sale . . . [but] the Parties could not agree on virtually anything." (*Id.* at 15.) Thus, the Referee could not conclusively say that it was feasible to subdivide the Property.

////

1       Second, the Referee found that there would be no economic benefit derived
2 from subdivision of the Property. (*Id.* at 4.) The Referee reviewed the Ketcham
3 appraisal and found that, if subdivided, the Property's value would increase by
4 $35,000. (*Id.* at 14.) Ketcham appraised the value of the Property as a whole at
5 $1,125,000, and the value of the Property subdivided at $530,000 for Parcel 1 and
6 $630,000 for Parcel 2. (ECF No. 442 at 58.) But Ketcham noted that "the value
7 conclusions for hypothetical configuration into two improved parcels, Parcel 1 and
8 Parcel 2, do not reflect costs for subdivision and any required
9 infrastructure/improvements." (*Id.*) SCO estimated the subdivision costs at about
10 $33,348. (ECF No. 441 at 14.) Thus, the "gain in value within a modest margin of
11 error would be equal roughly to the estimated costs of the subdivision." (*Id.*) SCO
12 also opined that subdivision of the property would be inequitable because
13 subdivision would result in different lot sizes, which could affect property values. (ECF
14 No. 441-5.) Accordingly, the Referee concluded that it would be more equitable to
15 sell the Property rather than divide it among the Parties. (ECF No. 441 at 6.)
16       Following submission of the Partition Report, the Parties were granted an
17 opportunity to submit briefing in response. (*See* ECF Nos. 445–448.) The Court
18 subsequently stayed this matter on February 7, 2020, pending resolution of a Ninth
19 Circuit appeal which would clarify whether the Court's Interlocutory Judgment was a
20 final order, reasoning that "its authority to adopt Farrar's recommendations is
21 contingent upon whether the May 30, 2018, findings of fact and conclusions of law
22 amounted to a final judgment." (ECF No. 453.)
23       The Court lifted the stay on March 13, 2024, following the Ninth Circuit's
24 determination that the Interlocutory Judgment was not a final order. (*See* ECF No.
25 483.) As the Court found, because "the Interlocutory Judgment on Partition was not a
26 final order," the Court could "reconsider the prior order to partition the Property in
27 kind." (*Id.* at 9.) Given the substantial time during which the matter was stayed, the
28 Court ordered "Referee Farrar to advise the Court within twenty-one days of this

Order whether any updates to the Partition Report are necessary." (*Id.*) The Referee filed a response on April 2, 2024, in which he advised the Court that no updates to the Partition Report were necessary. (ECF No. 488.) Accordingly, the Court set a hearing on the Partition Report and ordered the Parties to file updated briefing on the Partition Report if desired, which they did. (ECF Nos. 497, 500, 502.)

The Court held a hearing on the Partition Report on August 22, 2024, with Peter Kleinbrodt and Christian Kemos appearing for Plaintiffs, and Michael DeMartini and Renate DeMartini appearing pro se. The matter was submitted.

## **LEGAL STANDARD**

Partition actions are governed by Code of Civil Procedure section 872.010, *et seq.* Under section 872.720, "[i]f the court finds that the plaintiff is entitled to partition, it shall make an interlocutory judgment that determines the interests of the parties in the property and orders the partition of the property and, unless it is to be later determined, the manner of partition." Code Civ. P. § 872.720(a).

"The manner of partition may be 'in kind'—i.e. physical division of the property— according to the parties' interests as determined in the interlocutory judgment." *Cummings v. Dessel*, 13 Cal. App. 5th 589, 597 (2017) (citation omitted); *see also* Code Civ. P. § 872.810. "Alternatively, if the parties agree or the court concludes it 'would be more equitable,' the court may order the property sold and the proceeds divided among the parties." *Cummings*, 13 Cal. App. 5th at 597 (quoting Code. Civ. P. § 872.820). "For the purpose of making [that] determination, the court may appoint a referee and take into account his report." Code. Civ. P. § 872.820. "The third option, 'when the interests of all parties are undisputed or have been adjudicated,' and the parties agree, is partition by appraisal." *Cummings*, 13 Cal. App. 5th at 597 (quoting Code. Civ. P. § 873.910).

////

////

////

# DISCUSSION

## I. The Parties Have Not Agreed to Partition by Appraisal

Partition by appraisal must be agreed to in writing by the Parties and filed with the Clerk of Court. Code. Civ. P. § 873.920. The Court cannot order partition by appraisal if the Parties have not agreed to that procedure in writing. *See Cummings*, 13 Cal. App. 5th at 598–602.

To date, the Parties have not agreed to partition by appraisal. (*See* ECF No. 500 at 4.) Thus, the Court cannot order this remedy.

## II. The Court Will Order Partition by Sale as it is More Equitable than Partition in Kind

Plaintiffs urge the Court to adopt the Referee's recommendation that the Property be partitioned by sale. (ECF No. 500 at 3.) Defendants argue the Court should disregard the Referee's recommendation and abide by its original ruling to partition the Property in kind. (ECF No. 502 at 1–4.)

The Court finds partition by sale to be the more equitable remedy. "As a rule, the law favors partition in kind, since this does not disturb the existing form of inheritance or compel a person to sell his property against his will." *Richmond v. Dofflemyer*, 105 Cal. App. 3d 745, 757 (1980). "Forced sales are strongly disfavored," and the "burden of proof is on one endeavoring to force a sale as against unwilling co-owners to prove that the case is not a proper one for partition in kind." *Id*. "[B]efore ordering a sale, the court must ascertain that the interests of all will thereby be promoted." *Butte Creek Island Ranch v. Crim ("Butte Creek")*, 136 Cal. App. 3d 360, 368 (1982). However, "in many modern transactions, sale of the property is preferable to physical division since the value of the divided parcels frequently will not equal the value of the whole parcel before division. Moreover, physical division may be impossible due to zoning restrictions or may be highly impractical . . . ." *Id*. at 365.

There are two types of evidence sufficient to justify a partition sale of property. "The first is evidence that the property is so situated that a division into subparcels of

7

equal value cannot be made." *Id.* at 366. "In order to meet this test the party desiring a partition sale must show that the land cannot be divided." *Id.* The second is "economic evidence to the effect that, due to the particular situation of the land, the division of the land would substantially diminish the value of each party's interest." *Id.* at 367. "The generally accepted test in this regard is whether a partition in kind would result in a cotenant receiving a portion of the land which would be worth materially less than the share of the money which could be obtained through sale of the land as a whole." *Id.*

Based on the evidence before the Court, the Court finds that successful subdivision of the Property is theoretically possible. SCO submitted a subdivision Pre-Application Review to Nevada County, and received detailed comments setting forth the steps the Parties would need to take to move forward with subdivision. For instance, the County found that division of the Property would not meet lot frontage requirements, as the minimum road frontage required in the Property's zoning district for each subdivided parcel would be 150 feet, and the Property as a whole had only 150 feet of road frontage. (ECF No. 441-3 at 2.) Thus, the Parties would need to apply for and receive a variance to the zoning regulations. (*Id.*) The County recommended that Parcel 2 be designed as a "flagpole" lot to give that parcel some road frontage. (*Id.*) The County noted that subdivision of the Property would require the Parties to enter into several agreements and easements, such as an access easement, as road access for Parcel 2 would require traversing Parcel 1, and a shared sewage disposal maintenance agreement. (*Id.* at 2–4.) Finally, subdivision would require several improvements to the Property, including additional parking for Parcel 1, and development of a fire department turnaround lane. (*Id.* at 2, 5.) Based on these comments, SCO was optimistic about the chances of County approval for the subdivision, finding that "based on input from County Staff, obtaining a favorable decision for approval and compliance with local development standards is highly likely." (ECF No. 441-5 at 1.)

1    That said, SCO cautioned that "until the required testing and additional reports
2    confirm compliance and the public review process is complete, there is no guarantee
3    that approval and compliance will be successful." (*Id.*) They also opined that "[g]iven
4    the parameters we obtained from the Pre-Application Review process we believe that
5    subdividing the parcel would not result in an equitable partition . . . ." (*Id.*) In
6    particular, SCO noted that because of the lot frontage requirements and the County's
7    recommendation to adopt a flagpole lot design for Parcel 2, a smaller front lot (Parcel
8    1) and a larger back lot (Parcel 2) would be required, resulting in potentially different
9    property values. (*Id.* at 1–2.)

10    This concern is exacerbated by the Ketcham appraisal, which found that, even if
11    the parcels were divided into equal square footage, Parcel 1's estimated value would
12    be $530,000, while Parcel 2's estimated value would be $630,000. (ECF No. 442 at
13    58.) The value of the Property as a whole is $1,125,000, which divided equals
14    $562,500. (*Id.*) Based on this, the Court finds that subdivision of the Property would
15    be economically disadvantageous to the Parties awarded Parcel 1, as those Parties
16    would receive roughly $30,000 less than if the Property were sold and the proceeds
17    split.[3] In addition, while the parcels were already appraised with a $100,000
18    difference in value, there is potential for an even greater difference in value if the
19    subdivision were completed according to the County's proposed flagpole lot
20    configuration. Further, as noted by the Referee in his Partition Report, any overall
21    increase to the value of the Property gained by subdivision would most likely be
22    negated by the subdivision costs. Thus, subdivision of the Property would neither
23    confer economic benefit on the Parties, nor treat the Parties equitably.
24    Finally, the Court notes that, even if the County's approval of subdivision were
25    guaranteed, obtaining such approval would "require the cooperation of both owners
26    in order to successfully obtain the report and studies, perform the subdivision map

---

28   [3] Acknowledging, of course, that the costs of selling the Property might lessen this gap somewhat.

9

design, and the related owner input on decisions required for preparing that map and preparation of the Tentative Map Application required by Nevada County." (ECF No. 441-5 at 1.)  The Parties have consistently shown throughout this litigation that they have difficulty working together in a productive manner.  Therefore, the Court doubts that the Parties could obey the Court's order to partition the Property in kind without imposing a substantial burden on the Referee and this Court to mediate ongoing disputes.  "The primary purpose of a partition suit is . . . to partition the property, that is, to sever the unity of possession . . . [and] to permit cotenants to avoid the inconvenience and dissension arising from sharing joint possession of land." *Cummings*, 13 Cal. App. 5th at 596 (citations omitted).  The Court finds that partition by sale will best serve the primary purpose of partition and is the most equitable result for both Parties.

      District courts have broad, inherent authority to modify, alter, or revoke interlocutory orders.  *See City of Los Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 889 (9th Cir. 2001).  Accordingly, the Court will modify its Interlocutory Judgment and order partition by sale rather than partition in kind under Code of Civil Procedure section 872.820.  In preparation for the sale, the Court will order the Referee to commission an updated appraisal of the Property.  The Court will also order the Parties to submit their preferred manner, terms, and conditions of sale to the Referee. Finally, at the hearing, Defendants informed the Court that a former tenant had leaked oil onto the Property causing environmental contamination.  Defendants noted the contamination is largely superficial, and is dissipating on its own, but may require remediation before the Property is sold.  Accordingly, the Court will order the Referee to submit his recommendations to the Court as to what, if any, assessment and/or remediation of the environmental contamination should occur before the sale.[4]

---

[4] It is currently unclear what impact, if any, the environmental contamination will have on the sale.  If the environmental contamination ultimately proves to be so severe or so costly as to prevent sale of the Property, the Court will revisit partition in kind.

**CONCLUSION**

In accordance with the above, it is hereby ORDERED that:

1. The Referee's Partition Report (ECF No. 441) is adopted in full;
2. The Property located at 12757, 12759, and 12761 Loma Rica Drive, Grass Valley, California shall be partitioned by sale under Code of Civil Procedure section 872.820;
3. The Referee is authorized to commission an updated appraisal of the Property from Daniel R. Ketcham & Associates;
4. The Parties shall meet and confer within fourteen (14) days of this Order concerning their preferred manner, terms, and conditions of sale, and shall submit their preferences to the Referee within twenty-one (21) days of their meet and confer efforts;
5. The Referee shall prepare a report and recommendations as to the manner, terms, and conditions of sale, as well as any required assessment and/or remediation of environmental contamination, within thirty-one (31) days of receipt of the Parties' preferences for sale and updated appraisal; and
6. The Court will conduct a hearing on the Referee's report and recommendations pursuant to a noticed motion. *See* Code Civ. P. § 873.610(b).

IT IS SO ORDERED.

Dated:  **November 4, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC4 – DeMartini14cv2722.PartitionOrder

11